UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

RICHARD HOLLAND,

                       Petitioner,                            **MEMORANDUM OF DECISION AND ORDER**

   -v.-                                          04-CV-3521 (DRH)(MLO)

M. ALLARD, Superintendent,

                       Respondent.
_____

**Appearances:**

**For the Petitioner:**
**RICHARD HOLLAND, PRO SE**
Hudson Correctional Facility
PO Box 576
Hudson, New York 12534-0576

**For the Respondent:**
**Rosalind C. Gray**
Suffolk County District Attorney's Office
200 Center Drive
Riverhead, New York 11901

**HURLEY, District Judge:**

        Richard Holland ("Petitioner") petitions for a writ of habeas corpus, pursuant to

28 U.S.C. § 2254, from his March 19, 2001 conviction of Robbery in the Second Degree. For

the reasons stated below, the petition is denied.

## FACTUAL BACKGROUND

        On June 16, 2000, Suffolk County Police Officer Kevin Finnegan and his partner,

Tom Bosco, responded to a radio transmission reporting a robbery at an Amoco Gas Station in

Wyandanch, New York. (Jan. 25, 2001 Tr. ("Tr.") at 14-15.) Upon their arrival at the gas

station, the officers met the alleged victim, Peter McCardle ("McCardle"). (*Id.* at 16.) After

interviewing McCardle, the officers learned that he was the victim of a robbery by two black males, one of whom could not be identified; the other was wearing a long-sleeved black shirt with black jeans. (*Id.* at 15-17.)

The officers placed McCardle in their patrol car and canvassed the neighborhood for suspects. (*Id.* at 17, 26.) Over the course of ten minutes, McCardle was shown approximately six individuals meeting the suspect's general description. (*Id.* at 17-18.) McCardle indicated that none of these individuals was involved in the robbery. (*Id.* at 18.)

Minutes later, the officers received a radio transmission from Suffolk County Police, Community Oriented Police Enforcement Unit officers ("COPE Officers") stating that they had detained a potential suspect meeting McCardle's description. (*Id.* at 18-19.) The officers were then directed to a slightly wooded area behind a restaurant, just north of the gas station, where people "hang out and use drugs and drink." (*Id.* at 19.) Upon their arrival, and upon seeing Petitioner standing uncuffed with the COPE officers, McCardle, without hesitation, stated "that's him, that's the guy that threw me to the ground." (*Id.* 20, 30.) The officers placed Petitioner under arrest and transported him to the First Precinct. (*Id.* at 20-21.) During transport, Petitioner was informed, as per his inquiry, that he was arrested for his alleged participation in a robbery. (*Id.* at 41.) Immediately thereafter, and not in response to any questioning by the officers, Petitioner allegedly came forward with a battery of spontaneous incriminating statements. (*Id.* at 41-42.)

## PROCEDURAL BACKGROUND

On January 25, 2001, Petitioner appeared before the County Court, Suffolk County (Corso, J.) for the purpose of hearings to determine the admissibility of the police

identification procedures pursuant to *People v. Wade* and the voluntariness of Petitioner's statements under *People v. Huntley*. By Order dated January 29, 2001, the court found the identification proper and the statements by Petitioner voluntary and therefore admissible and the matter was adjourned for trial.

On March 19, 2001, Petitioner was found guilty after trial of one count of Robbery in the Second Degree in violation of section 160.10 of the New York Penal Law. On April 24, 2001, the County Court sentenced Petitioner to seven years incarceration. On April 24, 2001, Petitioner filed a notice of appeal from his judgment of conviction.

By Order to Show Cause dated October 12, 2001, Petitioner, proceeding pro se, sought to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440 alleging that: (1) he was denied the right to counsel; and (2) he was denied an opportunity to testify before the Grand Jury. By Order dated December 31, 2001, the County Court, Suffolk County (Weber, J.) denied his motion with leave to renew on the grounds that his Grand Jury claim was time barred and the remainder of his claims were "incomprehensible." Petitioner did not appeal the court's decision.

On March 1, 2002, Petitioner filed a second motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440. He claimed: (1) fraud and misrepresentation; (2) denial of counsel; (3) exclusion of an exculpatory witness's testimony; (4) ineffective assistance of counsel; and (5) the identification procedure was improper. He also challenged the credibility of trial witnesses, the quality of the evidence adduced at trial, and the conduct of the prosecutor. By Order dated April 22, 2002, the County Court, Suffolk County (Weber, J.) denied the motion finding that "[e]ach claim has absolutely no merit."

Petitioner filed his third motion to vacate his conviction and sentence pursuant to N.Y. Crim. Proc. Law §§ 440.10 and 440.20 on October 23, 2003. By Order dated December 8, 2003, the County Court, Suffolk County (Weber, J.) denied Petitioner's motion, finding it "unintelligible." On March 19, 2004, the Appellate Division, Second Department denied Petitioner's request for leave to appeal this decision. On May 3, 2004, Petitioner's application for a certificate for leave to appeal the December 8, 2003 decision was denied by the New York Court of Appeals.

Petitioner's direct appeal was perfected on February 28, 2003. Petitioner's appellate counsel raised four issues: (1) whether proof of guilt was established beyond a reasonable doubt; (2) allegedly improper identification procedure; (3) undue severity of sentence; and (4) allegedly improper denial of two of defense counsel's challenges regarding potential jurors for cause. On April 21, 2003, Petitioner sought and was granted permission to file a pro se supplemental brief. As best as the Court can decipher from Petitioner's papers, he raised a number of additional grounds for appeal: (1) his alibi witness was omitted; (2) the trial court did not have jurisdiction due to an allegedly defective indictment; (3) ineffective assistance of counsel; (4) statement allegedly made by Petitioner to the police was "concocted" and should not have been introduced into evidence; (5) the trial court improperly excluded the testimony of a witness; (6) his allegation of false arrest was never investigated; (7) the trial court allegedly admitted evidence improperly and excluded evidence favorable to the defense; (8) deficient jury instructions; and (9) the verdict was against the weight of the evidence.

On February 2, 2004, the Appellate Division, Second Department affirmed the judgment of conviction. The court held, inter alia, that the evidence adduced at trial was legally

sufficient to establish Petitioner's guilt of robbery in the second degree beyond a reasonable doubt, the verdict was not against the weight of the evidence, the sentence imposed was not excessive, and that all of Petitioner's "remaining contentions, including those raised in his supplemental pro se brief, are without merit." *People v. Holland*, 770 N.Y.S.2d 872, 872-73 (2d Dep't 2004). Petitioner's application for leave to appeal to the New York Court of Appeals was denied on April 2, 2004.

Petitioner also filed an application for a writ of error coram nobis alleging ineffective assistance of appellate counsel. By Order dated June 7, 2004, the Appellate Division, Second Department denied his application finding that Petitioner had "failed to establish that he was denied the effective assistance of appellate counsel." *People v. Holland*, 777 N.Y.S.2d 916, 917 (2d Dep't 2004). On August 4, 2004, the New York Court of Appeals denied Petitioner's application for leave to appeal this decision. *People v. Holland*, 3 N.Y.3d 675 (2004).

On August 12, 2004, Petitioner filed the instant petition seeking to vacate his sentence pursuant to 28 U.S.C. § 2254. Petitioner lists four grounds in support of his argument that his New York State conviction was obtained in violation of the United States Constitution: (1) "Suggestive I.D. procedure violated Wade and identified the wrong man, [M]iranda, Brady"; (2) "Deprived of Right to counsel, Grand Jury testimony and appearance, no preliminary hearing at crucial stage"; (3) "Defective Indictment w/out counsel or the elements of the crime"; and (4) "Deprived of Right to a fair trial [and] ineffective assistance of counsel." (Petition at 6-10.) Although Petitioner later attempted to add exhibits to his petition, he was instructed by this Court's Pro Se Office on September 10, 2004 that he could not simply add documents to his petition but rather had to amend his petition pursuant to Federal Rule of Civil Procedure 15(c),

which Petitioner neglected to do.

**DISCUSSION**

I.      **Claims that are Procedurally Barred**

    A.      **Alleged Denial of a Preliminary Hearing**

        It is well settled that a federal court may not grant the habeas petition of a state prisoner unless "the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process; or circumstances exist that render such process ineffective to protect the rights of the applicant."  28 U.S.C. § 2254(b)(1).  To fulfill the exhaustion requirement, a petitioner must have presented  "the substance of the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court of the pertinent state." *Aparicio v. Artuz*, 269 F.3d 78, 89-90 (2d Cir. 2001) (internal quotation marks and citations omitted).  "When a claim has never been presented to a state court, a federal court may theoretically find that there is an 'absence of available State corrective process' under § 2254(b)(1)(B)(I) if it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile.  In such a case the habeas court theoretically has the power to deem the claim exhausted." *Id.* at 90.  Federal review of such claims may only be had where the petitioner can demonstrate cause for the default and prejudice, or demonstrate that failure to consider the claim will result in a miscarriage of justice.  *Id.* (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991))

        Here, Petitioner's claim that he was denied a preliminary hearing during the indictment stage was not raised during the course of his state court proceedings.  Petitioner was entitled to one appeal to the Appellate Division and one request for leave to appeal to the New

York Court of Appeals, both of which he pursued long ago. Pursuant to N.Y. Crim. Proc. Law § 440.10(2)(c), Petitioner's failure to raise this issue on direct appeal would now preclude him from raising this issue on collateral attack. *See* Aparicio, 269 F.3d at 91 (noting that § 440.10(2)(c) does not permit collateral attacks on a conviction where the defendant unjustifiably failed to raise the issue on direct appeal). Thus the Court may deem this claim exhausted but procedurally barred. *Id.* at 90. In order for the Court to review this issue, Petitioner would have to show "cause for the default and actual prejudice" or a "fundamental miscarriage of justice" as explained above. *Coleman*, 501 U.S. at 750 (1991). As cause for the default, Petitioner argues that his appellate attorney failed to raise the issue on appeal.

"Ineffective assistance of appellate counsel, if established, can constitute 'cause' excusing the procedural default, *see Edwards v. Carpenter*, 529 U.S. 446, 451 (2000), but '[a]ttorney error short of ineffective assistance of counsel does not constitute cause for a procedural default even when that default occurs on appeal rather than at trial.'" *Jeremiah v. Artuz*, 181 F. Supp. 2d 194, 200 (E.D.N.Y. 2002) (quoting *Murray v. Carrier*, 477 U.S. 478, 492 (1986)); *see also Aparicio*, 269 F.3d at 91-92. Thus, the Court must find that appellate counsel was constitutionally ineffective in order to review Petitioner's claim on the merits. *See Edwards*, 529 U.S. at 451-52.

Here, the Court finds that appellate counsel was not ineffective for failing to raise the alleged absence of a preliminary hearing on direct appeal as there is nothing in the record to suggest that this claim has any merit. Presumably, Petitioner is referring to section 180.10 of the New York Criminal Procedure Law which provides that a "defendant has a right to a prompt hearing upon the issue of whether there is sufficient evidence to warrant the court in holding him

for the action of a grand jury, but he may waive such right." N.Y. Crim. Proc. Law § 180.10(2). The practice commentaries to section 180.10 provide that even though a defendant "has the right to a prompt hearing, . . . that "right" is illusory, as the People can (and frequently do) avoid the hearing by presenting the charge to a grand jury. Indictment by a grand jury terminates the proceedings in the local criminal court--including the "right" to a hearing--and there is no remedy thereafter for deprivation of a hearing." *Id.* 1993 Practice Commentaries (citing, inter alia, N.Y. Crim. Proc. Law § 180.80(2) and *People v. Hodge*, 53 N.Y.2d 313, 319 (1981)). Here, Petitioner was arrested on June 16, 2000 and indicted by the Grand Jury on June 21, 2000. Accordingly, the indictment mooted his right to a hearing and state law afforded Petitioner no remedy for the absence thereof. Therefore, Petitioner cannot legitimately argue that his appellate counsel was ineffective in failing to raise this ground and thus cannot establish cause for procedurally defaulting on this claim. *Cf. John v. People of State of N.Y.*, No. 91 Civ. 7634, 1992 WL 261282, at *1 (S.D.N.Y. Sept. 29, 1992) ("[T]here is no federal constitutional requirement for a preliminary hearing as a prerequisite to a valid conviction at trial."). Nor has Petitioner shown that a fundamental miscarriage of justice will occur if the Court does not review his claim. Accordingly, Petitioner's claim regarding "no preliminary hearing at crucial stage" is dismissed.

### B. Alleged Denial of the Right to Testify Before the Grand Jury

Petitioner raised this claim, i.e., that he was deprived of the right to testify before the Grand Jury, on his first motion to vacate the judgment of conviction in October 2001. The county court denied his motion with leave to renew and ruled that his Grand Jury claim was time barred. Petitioner did not appeal this decision nor did he raise this argument in his later motions

to set aside the conviction or on direct appeal.  Pursuant to N.Y. Crim. Proc. Law § 190.50(c), a motion to set aside an indictment on the ground that a defendant was not permitted to testify before the Grand Jury must be made within five days after the defendant has been arraigned or it is waived.  As the County Court found, because Petitioner did not make his motion within the statutorily required time, his claim is now barred.  Therefore, this claim is procedurally barred as Petitioner cannot now raise it in the state courts.

Moreover, Petitioner cannot establish "cause for the default and actual prejudice" or a "fundamental miscarriage of justice."  *Coleman*, 501 U.S. at 750 (1991).  The record reveals that Petitioner was served with a grand jury notice that informed him of his right to testify but that he choose not to do so.  In any event, any deficiencies in the Grand Jury proceedings were rendered harmless by Petitioner's conviction at trial by a jury assessing Petitioner's guilt under a heightened standard of proof and thus would not entitle Petitioner to habeas relief.  *See Lopez v. Riley*, 865 F.2d 30, 32 (2d Cir. 1989) (finding grand jury claims not cognizable under 28 U.S.C. § 2254).  Accordingly, this claim is dismissed.

## II.     Claims that are Dismissed on the Merits

### A.     Standard of Law

Under the provisions of Section 2254(d), a habeas corpus application must be denied unless the state court's adjudication of the claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d)(1), (2).

A decision is "contrary to" established Federal law if it either "applies a rule that contradicts the governing law set forth in" a Supreme Court case, or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [their] precedent." *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362 (2000)). A decision is an "unreasonable application of" clearly established Supreme Court precedent if it "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." *Id.*

**B.      Suggestive Identification Procedure**

Petitioner claims that he was subjected to an unduly suggestive identification procedure and that he was denied the right to an attorney during this procedure. The Second Department found that "[a]lthough the victim was aware that he would be looking at a potential suspect, the showup was conducted in close geographical and temporal proximity to the crime, and it was not unduly suggestive." *People v. Holland*, 770 N.Y.S.2d at 873 (citations omitted).

As an initial matter, to the extent Petitioner is claiming that he had a right to counsel at the time McCardle identified him, or that his absence of counsel violated *United States v. Wade*,[1] his claim must be dismissed as "it has been firmly established that a person's Sixth and Fourteenth Amendment right to counsel attaches only at or after the time that adversary judicial proceedings have been initiated against him." *Kirby v. Illinois*, 406 U.S. 682, 688 (1972). Here, the victim identified Petitioner prior to his arrest and thus no right to counsel was implicated. *Cf. id.* at 690 (finding that police station show-up that took place after

---

[1] In *United States v. Wade*, the Supreme Court held that a post-indictment lineup is a "critical stage" in a defendant's prosecution, thus entitling the defendant to the presence of counsel. 388 U.S. 218, 237 (1967).

petitioner's arrest but before he had been indicted or otherwise formally charged with any criminal offense was not a "criminal prosecution" at which petitioner had constitutional right to be represented by counsel).

Next, Petitioner argues that his Constitutional rights were violated when the state court failed to suppress McCardle's "show-up" identification of Petitioner. A "show-up" or the practice of showing suspects to a victim solely for the purpose of identification and not as part of a line-up, has been widely condemned. *See Brisco v. Phillips*, 376 F. Supp. 2d 306, 312 (E.D.N.Y. 2005) (citations omitted). The Supreme Court has held that an identification procedure is suggestive when it "in effect . . . says to the witness '*This* is the man.'" *Foster v. California*, 394 U.S. 440, 443 (1969). "However, 'even a suggestive out-of-court identification will be admissible if, when viewed in the totality of the circumstances, it possesses sufficient indicia of reliability.'" *United States v. Mohammed*, 27 F.3d 815, 821 (2d Cir. 1994) (quoting *United States v. Simmons*, 923 F.2d 934, 950 (2d Cir. 1991)).

In assessing the reliability of identification testimony, courts examine the following factors:

> [T]he opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Id.* (quoting *Neil v. Biggers*, 409 U.S. 188, 199 (1972)). These factors are assessed "'in light of the totality of the circumstances.'" *Id.* (quoting *United States v. Concepcion*, 983 F.2d 369, 378 (2d Cir. 1992)). "'A good or poor rating with respect to any one of the[ ] factors will generally not be dispositive.'" *Id.* (quoting *Concepcion*, 983 F.2d at 377).

Here, the testimony given at the suppression hearing shows that McCardle was able to view Petitioner during the robbery and was able to give a description of what he was wearing. When McCardle identified Petitioner, after having already rejected approximately six other individuals meeting the suspect's general description, Petitioner was wearing a long-sleeved black shirt and black pants, as McCardle initially indicated. Given the fact that McCardle saw Petitioner during the robbery, was able to give an accurate detailed description of him, and had no hesitancy in identifying him with absolute certainty about twenty minutes after the incident, there is no basis for this Court to conclude that the state court's decision that the show-up was proper was based on an unreasonable determination of the facts or an unreasonable application of clearly established federal law. Accordingly, habeas corpus relief on this claim is denied.

### C.     Defective Indictment

Petitioner argues that the indictment was dismissed on June 22, 2004 and that there was no superceding indictment; therefore, the state trial court was deprived of jurisdiction. (Petition at 9.) Petitioner was convicted and sentenced in 2001. Petitioner does not suggest that the indictment dismissed in 2004 is the same one that formed the basis of his 2001 conviction. Accordingly, based on the information furnished, Petitioner's argument has no merit.

Petitioner also claims that the indictment was defective. Generally, a claim that a state indictment was insufficient is not subject to habeas relief unless the indictment falls below basic constitutional standards. *MacKenzie v. Portuondo*, 208 F. Supp. 2d 302, 303 (E.D.N.Y. 2002). "An indictment is sufficient when it charges a crime [1] with sufficient precision to inform the defendant of the charges he must meet and [2] with enough detail that he may plead

double jeopardy in a future prosecution based on the same set of events." *Devonish v. Keane*, 19 F.3d 107, 108 (2d Cir. 1994) (citation and internal quotation marks omitted).

Here, the indictment clearly passes constitutional muster as it specified the time and place the alleged crime occurred and set forth the essential elements of the crime of Robbery in the Second Degree as defined by the New York Penal Law. Accordingly, Petitioner was adequately informed of the crime charged and this claim is dismissed.

### D. Denial of Right to Counsel at Initial Arraignment

Petitioner also asserts that he was denied the right to counsel at his arraignment. Petitioner was arrested on June 16, 2000. The next day, he was arraigned on the felony complaint and pled not guilty. He appeared without counsel. On June 20, 2000, Petitioner returned to state court, again without counsel. On June 21, 2000, the case was presented to the Grand Jury which returned a true bill for Robbery in the Second Degree. On June 22, 2000, Petitioner was held for arraignment on the indictment. Thereafter, on June 27, 2000, Petitioner's assigned counsel made an appearance on the record and Petitioner was arraigned on the indictment. He entered a plea of not guilty.

Petitioner's argument that he was deprived of the right to counsel during his June 17, 2000 arraignment is without merit as the initial arraignment was not a critical stage in the proceedings against him which would have warranted counsel and Petitioner fails to show that he was otherwise prejudiced. *See U.S. ex rel. Guber v. Koson*, 273 F. Supp. 998, 1001 (S.D.N.Y. 1967) ("Arraignment is not such a crucial juncture of the proceeding in New York.") (citing N. Y. Code Crim. Proc. §§ 296 to 312-h)); *U.S. ex rel. Elksnis v. Gilligan*, 256 F. Supp. 244, 246 n.2 (S.D.N.Y. 1966) (same); *see also U.S. ex rel. John Hussey v. Fay*, 220 F. Supp. 562, 563

(S.D. N.Y. 1963) ("Under New York law, a defendant suffers no such prejudice, for whatever counsel could have done upon arraignment on defendant's behalf, counsel were free to do thereafter. There is nothing in New York law which in any way prevents counsel's later taking advantage of every opportunity or defense which was originally available to a defendant upon his initial arraignment.").    Accordingly, this claim is dismissed.

### E.    Ineffective Assistance of Counsel

Petitioner's final argument is that his trial counsel provided ineffective assistance because he failed to present a witness, "Bonnie Wells" ("Wells"), who allegedly would have provided Petitioner with an alibi.  Specifically, Petitioner contends that although he asked his attorney to interview Wells, no "pre trial investigation" was done.  (Petition at 10.)

In order to prevail on an ineffective assistance of counsel claim, a petitioner must first show that his counsel performed deficiently and that deficiency caused actual prejudice to his defense.  *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  A petitioner may prove the deficiency prong by establishing that his attorney's conduct fell "outside the wide range of professionally competent assistance."  *Id.* at 690.  The Court must, however, "indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Id.* at 689.

A petitioner can establish prejudice by showing a "reasonable probability" exists that, but for the deficiency, "the result of the proceeding would have been different."  *Id.* at 694. In this regard, the Second Circuit generally "requires some objective evidence other than defendant's assertions."  *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003).

Here, the Court need not consider the issue of deficient representation because

14

Petitioner has not shown that he was prejudiced by counsel's failure to interview Wells. *See Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."). Petitioner cannot demonstrate prejudice because he has not produced any evidence or even alleged that Wells would have testified at trial. "Courts have viewed claims of ineffective assistance of counsel skeptically when the only evidence of the import of a missing witness' testimony is from the [petitioner]," *Croney v. Scully,* No. CV-86-4335, 1988 WL 69766, at *2 (E.D.N.Y. June 13, 1988) (citation omitted), *aff'd*, 880 F.2d 1318 (2d Cir. 1989), and thus have refused to entertain claims of ineffective assistance for failure to interview a witness where the petitioner fails to demonstrate that the witness would have testified at trial. *See, e.g., McCarthy v. U.S.*, No. 02 CV 9082, 2004 WL 136371, at *17 (S.D.N.Y. Jan. 23, 2004) (collecting cases), *Report and Recommendation Adopted By*, 2004 WL 1535577 (S.D.N.Y. July 9, 2004); *Croney*, 1988 WL 69766, at *2. In the instant case, Petitioner has not produced any evidence, such as an affidavit from Wells, showing that Wells would have testified at trial to what Petitioner claims she would have. Moreover, he has not produced evidence that Wells would have testified at all. Thus, Petitioner has failed to demonstrate that his counsel's failure to interview Wells prejudiced him. Accordingly, habeas relief is denied on this ground.

Finally, the Court notes that under his claim of ineffective assistance of counsel, Petitioner adds "Prosecutorial misconduct of A.[D].A. Telling victim about bandages on fingers, at trial, that he didn't see?" (Petition at 11.) Examination of the record reveals that McCardle specifically recalled Petitioner's bandaged fingers as Petitioner "wagged" a finger at him, warning him not to call the police and that Petitioner's fingers were bandaged at the time of

arrest.  Apparently, Petitioner is alleging that the prosecutor told McCardle that Petitioner's

fingers were bandaged at the time of his arrest.  Petitioner's bare allegations, absent any factual

basis, are insufficient to support a claim of prosecutorial misconduct.  Accordingly, this claim is

dismissed.

## CONCLUSION

For the foregoing reasons, the petition is denied.  The Clerk of the Court is

directed to close this case.

**SO ORDERED.**

Dated: Central Islip, N.Y.
          October 26, 2005

                                                    /s_____
                                                    Denis R. Hurley,
                                                    United States District Judge